UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SHERRY L. R.,[1]

          Plaintiff,

    v.

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

          Defendant.

Case No. 2:21-cv-05672-JC

MEMORANDUM OPINION AND
ORDER OF REMAND

## I.    SUMMARY

On July 13, 2021, plaintiff filed a Complaint seeking review of the
Commissioner of Social Security's denial of plaintiff's application for benefits.
The parties have consented to proceed before the undersigned United States
Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary
judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion")

---

[1]Plaintiff's name is partially redacted to protect plaintiff's privacy in compliance with
Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on
Court Administration and Case Management of the Judicial Conference of the United States.

1  (collectively "Motions").  The Court has taken the Motions under submission

2  without oral argument.  See Fed. R. Civ. P. 78; L.R. 7-15; July 14, 2021 Case

3  Management Order, ¶ 5.

4      Based on the record as a whole and the applicable law, the decision of the

5  Commissioner is REVERSED AND REMANDED for further proceedings

6  consistent with this Memorandum Opinion and Order of Remand.  Substantial

7  evidence does not support the Administrative Law Judge's ("ALJ's") residual

8  functional capacity assessment.

9  **II.    BACKGROUND AND SUMMARY OF ADMINISTRATIVE**

10  **DECISION**

11     On or about May 9, 2018, plaintiff protectively filed an application for

12  Disability Insurance Benefits, alleging disability beginning on April 4, 2018, due

13  to high blood pressure, diabetes, foot neuropathy, gout, spinal problems, sleep

14  apnea, restless leg syndrome, and ovarian cysts.  (Administrative Record ("AR")

15  15, 164-70, 192-93).  The ALJ subsequently examined the medical record and

16  heard testimony from plaintiff (who was represented by counsel) and a vocational

17  expert.  (AR 30-58).

18     On January 7, 2021, the ALJ determined that plaintiff had not been disabled

19  through the date of the decision.  (AR 15-25).  Specifically, the ALJ found:

20  (1) plaintiff suffered from the following severe impairments:  lumbar spine

21  degenerative changes with stenosis, cervical spine degenerative changes, diabetes

22  mellitus, and obesity (AR 18-19); (2) plaintiff's impairments, considered

23  individually or in combination, did not meet or medically equal a listed impairment

24  (AR 19); (3) plaintiff retained the residual functional capacity to perform sedentary

25  work (20 C.F.R. §§ 404.1567(a)), with additional limitations[2] (AR 20-23);

26

27     [2]The ALJ determined that plaintiff would be limited to:  (1) jobs allowing changing
28  position every 30 minutes for one to two minutes in the immediate vicinity of the work station;

(continued...)

(4) plaintiff was unable to perform her past relevant work (AR 23-24); and
(5) plaintiff could perform other work existing in significant numbers in the
national economy and therefore was not disabled (AR 24-25 (purportedly adopting
vocational expert testimony at AR 54-56)).

On June 7, 2021, the Appeals Council denied plaintiff's application for
review.  (AR 1-3).

## III.   APPLICABLE LEGAL STANDARDS

### A.   Administrative Evaluation of Disability Claims

To qualify for disability benefits, a claimant must show that she is unable "to
engage in any substantial gainful activity by reason of any medically determinable
physical or mental impairment which can be expected to result in death or which
has lasted or can be expected to last for a continuous period of not less than
12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting
42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted), superseded by
regulation on other grounds as stated in Sisk v. Saul, 820 Fed. App'x 604, 606 (9th
Cir. 2020); 20 C.F.R. §§ 404.1505(a), 416.905(a).  To be considered disabled, a
claimant must have an impairment of such severity that she is incapable of
performing work the claimant previously performed ("past relevant work") as well
as any other "work which exists in the national economy." Tackett v. Apfel, 180
F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)).

To assess whether a claimant is disabled, an ALJ is required to use the five-
step sequential evaluation process set forth in Social Security regulations. See
Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th
Cir. 2006) (describing five-step sequential evaluation process) (citing 20 C.F.R.
§§ 404.1520, 416.920).  The claimant has the burden of proof at steps one through

---

[2](...continued)
(2) occasionally climbing stairs, balancing, stooping, kneeling, and crouching, but no crawling or
climbing ladders, ropes, or scaffolds; and (3) no exposure to vibration.  (AR 20).

1    four – *i.e.*, determination of whether the claimant was engaging in substantial

2    gainful activity (step 1), has a sufficiently severe impairment (step 2), has an

3    impairment or combination of impairments that meets or medically equals one of

4    the conditions listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings")

5    (step 3), and retains the residual functional capacity to perform past relevant work

6    (step 4).  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted).

7    The Commissioner has the burden of proof at step five – *i.e.*, establishing that the

8    claimant could perform other work in the national economy.  Id.

9              **B.      Federal Court Review of Social Security Disability Decisions**

10          A federal court may set aside a denial of benefits only when the

11   Commissioner's "final decision" was "based on legal error or not supported by

12   substantial evidence in the record."  42 U.S.C. § 405(g); Trevizo v. Berryhill, 871

13   F.3d 664, 674 (9th Cir. 2017) (citation and quotation marks omitted).  The standard

14   of review in disability cases is "highly deferential."  Rounds v. Commissioner of

15   Social Security Administration, 807 F.3d 996, 1002 (9th Cir. 2015) (citation and

16   quotation marks omitted).  Thus, an ALJ's decision must be upheld if the evidence

17   could reasonably support either affirming or reversing the decision.  Trevizo, 871

18   F.3d at 674-75 (citations omitted).  Even when an ALJ's decision contains error, it

19   must be affirmed if the error was harmless.  See Treichler v. Commissioner of

20   Social Security Administration, 775 F.3d 1090, 1099 (9th Cir. 2014) (ALJ error

21   harmless if (1) inconsequential to the ultimate nondisability determination; or

22   (2) ALJ's path may reasonably be discerned despite the error) (citation and

23   quotation marks omitted).

24          Substantial evidence is "such relevant evidence as a reasonable mind might

25   accept as adequate to support a conclusion."  Trevizo, 871 F.3d at 674 (defining

26   "substantial evidence" as "more than a mere scintilla, but less than a

27   preponderance") (citation and quotation marks omitted).  When determining

28   whether substantial evidence supports an ALJ's finding, a court "must consider the

1    entire record as a whole, weighing both the evidence that supports and the evidence

2    that detracts from the Commissioner's conclusion[.]"  Garrison v. Colvin, 759 F.3d

3    995, 1009 (9th Cir. 2014) (citation and quotation marks omitted).

4           Federal courts review only the reasoning the ALJ provided, and may not

5    affirm the ALJ's decision "on a ground upon which [the ALJ] did not rely."

6    Trevizo, 871 F.3d at 675 (citations omitted).  Hence, while an ALJ's decision need

7    not be drafted with "ideal clarity," it must, at a minimum, set forth the ALJ's

8    reasoning "in a way that allows for meaningful review."  Brown-Hunter v. Colvin,

9    806 F.3d 487, 492 (9th Cir. 2015) (citing Treichler, 775 F.3d at 1099).

10          A reviewing court may not conclude that an error was harmless based on

11   independent findings gleaned from the administrative record.  Brown-Hunter, 806

12   F.3d at 492 (citations omitted).  When a reviewing court cannot confidently

13   conclude that an error was harmless, a remand for additional investigation or

14   explanation is generally appropriate.  See Marsh v. Colvin, 792 F.3d 1170, 1173

15   (9th Cir. 2015) (citations omitted).

16   **IV.    DISCUSSION**

17          Plaintiff takes issue with, among other things, the ALJ's residual functional

18   capacity determination and resultant step five finding.  (Plaintiff's Motion at 2-9).

19   For the reasons stated below, the Court finds that substantial evidence does not

20   support the ALJ's residual functional capacity assessment.  Since the Court cannot

21   find that such error was harmless, a remand is warranted.

22          **A.     Summary of the Relevant Medical Record**

23          The record reflects treatment for, *inter alia*:  (1) cervical, thoracic, and

24   lumbar spine pain radiating to the legs with medication including Norco, some

25   physical therapy, and some emergency room visits for immediate pain relief , and

26   some facet block injections (AR 249-365, 568-72, 576-611); (2) gout with

27   medication (AR 690-97); and (3) diabetes with medication (AR 709-13).

28   ///

5

1         Various providers with High Desert Medical Group treated plaintiff and

2    occasionally provided letters after treatment indicating when plaintiff would be

3    able to return to work, as follows:  (1) a letter dated April 3, 2017, stating that

4    plaintiff would be able to return to work on April 4, 2017, after plaintiff presented

5    with chronic low back pain with sciatica (AR 509-10); (2) a letter dated June 26,

6    2017, stating that plaintiff would be able to return to work on June 29, 2017, with

7    no restrictions, after plaintiff presented with muscle spasms (AR 481-83); (3) a

8    letter dated September 15, 2017, stating that plaintiff would be able to return to

9    work on September 16, 2017, after plaintiff presented with muscle cramps (AR

10   462-63); (4) a letter dated November 1, 2017, stating that plaintiff would be able to

11   return to work on November 4, 2017, with no restrictions, after plaintiff presented

12   with a cough/acute viral syndrome (cold/flu) (AR 451-53); (5) a letter dated

13   January 22, 2018, stating that plaintiff would be able to return to work on January

14   25, 2018, after plaintiff presented with bronchitis (AR 440-41); (6) a letter dated

15   March 16, 2018, stating that plaintiff would be able to return to work on March 19,

16   2018, after plaintiff had presented with vaginal bleeding and nausea/vomiting (AR

17   419-20); (7) a letter dated April 10, 2018, stating that plaintiff would be able to

18   return to work on April 17, 2018, after plaintiff complained of declining health,

19   shortness of breath, stress and anxiety from commuting to Los Angeles to work

20   and the toll it was taking on her, and depression, at a time when she reportedly was

21   using a walker to ambulate (AR 376-77, 388); (8) a letter dated April 19, 2018,

22   stating that plaintiff would be able to return to work on July 10, 2018, after

23   plaintiff's provider diagnosed plaintiff with shortness of breath (AR 369-75).

24        State agency physicians reviewed the record initially in July 2018, and found

25   plaintiff capable of a range of medium work.  (AR 59-70).  On reconsideration in

26   ///

27   ///

28   ///

6

1  March 2019, state agency physicians again found plaintiff capable of a range of

2  medium work.  (AR 71-86).[3]

3  **B.    Pertinent Law**

4          For claims filed after March 27, 2017 (such as plaintiff's present claim), new

5  regulations govern the evaluation of medical opinion evidence.  Under these

6  regulations, ALJs no longer "weigh" medical opinions; rather, ALJs determine

7  which opinions are the most "persuasive" by focusing on several factors:

8  (1) supportability; (2) consistency; (3) relationship with the claimant (including the

9  length of treatment, frequency of examinations, purpose of treatment, extent of

10  treatment, whether the medical source examined the claimant); (4) the medical

11  source's specialty; and (5) "other" factors.  See 20 C.F.R. §§ 404.1520c(c)(1)-(5),

12  416.920c(c)(1)-(5).  The two most important factors in determining the

13  persuasiveness of medical opinions are supportability and consistency with the

14  evidence.  See 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  ALJs must explain how

15  they considered the factors of supportability and consistency, but need not explain

16  how they considered any other factor.  See 20 C.F.R. §§ 404.1520c(b),

17  416.920c(b).

18          Supportability means the extent to which a medical source supports

19          the medical opinion by explaining the "relevant. . . objective medical

20          evidence."  Consistency means the extent to which a medical opinion

21          is "consistent. . . with the evidence from other medical sources and

22          nonmedical sources in the claim.

23

24          [3]The record does not appear to contain any other opinion evidence.  Plaintiff was

25  scheduled to attend a consultative examination in February 2019, but apparently did not keep her
   appointment.  (AR 665 (letter warning plaintiff that her failure to respond within 10 days

26  regarding her missed appointment could result in her claim being "processed with the evidence
   in [the] file," and a decision that she is not disabled.); AR 79 (state agency physician on

27  reconsideration noting that plaintiff had failed to cooperate with the scheduled consultative
   examination, and that the available record was "insufficient for definitive adjudication.")).

28

1  Woods v. Kijakazi, 32 F.4th 785, 791-92 (9th Cir. 2022) (internal citations

2  omitted; citing 20 C.F.R. § 404.1520c(c)(1), (2)).

3      The new regulations also eliminated the term "treating source," as well as

4  the rule previously known as the treating source rule or treating physician rule,

5  which formerly required special deference to the opinions of treating sources.  See

6  20 C.F.R. §§ 404.1520c, 416.920c; Woods v. Kijakazi, 32 F.4th at 792 ("The

7  revised social security regulations are clearly irreconcilable with our caselaw

8  according special deference to the opinions of treating and examining physicians

9  on account of their relationship with the claimant.").  Even so, in evaluating

10  medical opinion evidence "under the new regulations, an ALJ cannot reject an

11  examining or treating doctor's opinion as unsupported or inconsistent without

12  providing an explanation supported by substantial evidence."  Woods v. Kijakazi,

13  32 F.4th at 792.  Finally, the new regulations command that an opinion

14  that a claimant is disabled or not able to work is "inherently neither valuable nor

15  persuasive," and an ALJ need not provide any analysis about how such evidence is

16  considered.  See 20 C.F.R. §§ 404.1520b(c)(3), 416.920b(c)(3).

17      As explained below, while the ALJ appears to have followed these new

18  regulations in making the relevant findings based on the available record,

19  substantial evidence does not support the ALJ's resultant residual functional

20  capacity determination.

21      **C.    Analysis**

22      In determining plaintiff's residual functional capacity, the ALJ found  "not

23  persuasive" the state agency physicians' opinions, which had found plaintiff

24  capable of a range of medium work.  (AR 23)  The ALJ reasoned that the opinions

25  were not consistent with the medical evidence, including imaging studies of the

26  spine and clinical findings and observations showing a history of complaints of

27  neck pain, back pain, radiculopathy, diabetes, neuropathy, anatomical

28  abnormalities and functional limitations of the spine and lower extremities.  (AR

23).  The ALJ also noted that the consultants offered their opinions more than one year prior to the ALJ's decision, and therefore they did not have the opportunity to review the updated record.  (AR 23).  The ALJ concluded,

> In light of the objective medical evidence. . . , the claimant's testimony regarding the limiting effects of her pain and her neuropathy. . ., and the claimant's obesity, the undersigned finds a limitation to work at the sedentary level to be appropriate.

(AR 23).

The ALJ acknowledged the letters from providers with the High Desert Medical Group between 2017 and 2018 – prior to the state agency physicians' review – indicating when plaintiff could return to work (sometimes without limitation) after certain visits, noting they were not a specific assessment of plaintiff's functional limitations, but also finding the opinions were "at least partially persuasive in that they further undermine the claimant's allegations of totally disabling symptoms and functional limitations." (AR 23).

It appears that the ALJ's residual functional capacity determination is based, at least in part, on the ALJ's lay interpretation of the updated medical record.  No medical source reviewed the updated medical record which the ALJ had found significant enough to render "not persuasive" the only available medical source statements.  The "off work" letters from the High Desert Medical Group are not specific enough to support the ALJ's findings.

An ALJ's decision must be supported by substantial evidence.  See 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . .").  An ALJ cannot properly rely on the ALJ's own lay knowledge to make medical interpretations of examination results or to determine the severity of medically determinable impairments.  See Tackett v. Apfel, 180 F.3d 1094, 1102-03 (9th Cir. 1999); Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); Balsamo v. Chater, 142

1   F.3d 75, 81 (2d Cir. 1998); see also Rohan v. Chater, 98 F.3d 966, 970 (7th Cir.

2   1996) ("ALJs must not succumb to the temptation to play doctor and make their

3   own independent medical findings"); Day v. Weinberger, 522 F.2d 1154, 1156 (9th

4   Cir. 1975) (an ALJ is forbidden from making his or her own medical assessment

5   beyond that demonstrated by the record); McAnally v. Berryhill, 2020 WL

6   1443734, at *6 (S.D. Cal. March 25, 2020) ("In making an RFC determination, an

7   ALJ may not act as his own medical expert as he is simply not qualified to interpret

8   raw medical data in functional terms") (citations and quotations omitted).

9         In the present case, absent expert medical assistance, and in light of the

10  treatment evidence suggesting plaintiff continued to complain of spine pain

11  radiating to the lower extremity between 2017 and 2020 (AR 21 (ALJ discussing

12  same)), the ALJ could not competently translate the updated medical evidence into

13  a physical residual functional capacity assessment.  See Tackett v. Apfel, 180 F.3d

14  at 1102-03 (ALJ's residual functional capacity assessment cannot stand in the

15  absence of evidentiary support); see generally Mayes v. Massanari, 276 F.3d 453,

16  459-60 (9th Cir. 2001) (ALJ's duty to develop the record further is triggered

17  "when there is ambiguous evidence or when the record is inadequate to allow for

18  the proper evaluation of the evidence") (citation omitted); Brown v. Heckler, 713

19  F.2d 441, 443 (9th Cir. 1983) ("[T]he ALJ has a special duty to fully and fairly

20  develop the record to assure the claimant's interests are considered.  This duty

21  exists even when the claimant is represented by counsel.").[4]

22        In sum, substantial evidence does not support the ALJ's conclusion that the

23  limitations the ALJ found to exist adequately account for plaintiff's severe

24  impairments.  The state agency physician opinions finding plaintiff capable of

25  _____

26        [4]Although plaintiff has a duty to prove disability (see 20 C.F.R. § 404.1512(a)(1)) and
    plaintiff may bear some responsibility for the lack of evidence to support the ALJ's residual
27  functional capacity assessment because she did not attend her scheduled consultative
    examination (see AR 665), this does not alter the fact that the record as it exists does not provide
28  substantial evidence to support the ALJ's residual functional capacity determination.

10

medium work, while also noting that the record was insufficient to evaluate plaintiff's claim, do not constitute substantial evidence.  Compare Sonja S. R. v. Berryhill, 2018 WL 3460165, at *6-7 (C.D. Cal. July 16, 2018) (substantial evidence failed to support residual functional capacity determination where state agency physicians' opinions did not consider later medical evidence supporting additional impairments and reflecting "potentially long-term conditions," and the ALJ had rendered ALJ's own lay interpretation of the updated medical record).

**V.    CONCLUSION**

For the foregoing reasons,[5] the decision of the Commissioner of Social Security is REVERSED and this matter is REMANDED for further administrative action consistent with this Opinion.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:  August 17, 2022

_____/s/_____
Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE

---

[5]The Court need not, and has not adjudicated plaintiff's other challenges to the ALJ's decision, except insofar as to determine that a reversal and remand for immediate payment of benefits would not be appropriate.  When a court reverses an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and quotations omitted); Treichler, 775 F.3d at 1099 (noting such "ordinary remand rule" applies in Social Security cases) (citations omitted).